UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
UNITED STATES OF AMERICA,

-against-

PAULINE WILTSHIRE,

                                Defendant.
---------------------------------------------------------- x

**MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION**

11-CR-164(DLI)(VVP)

**DORA L. IRIZARRY, U.S. District Judge:**

      Defendant Pauline Wiltshire ("Defendant") was charged with two violations of the conditions of her supervised release: (1) making a false statement to the Probation Department of the Eastern District of New York ("Probation," "EDNY") on April 16, 2012; and (2) leaving the judicial district of supervision on April 18, 2012 without permission. (*See* Violation of Supervised Release Report, Doc. Entry No 39.) The Court referred the violation hearing to the Hon. Viktor V. Pohorelsky, U.S. Magistrate Judge, for a Report and Recommendation ("R&R"). On November 5, 2012, following an evidentiary hearing, the magistrate judge issued a R&R recommending the Court find that Defendant committed both violations of supervised release. (*See* R&R, Doc. Entry No. 49.)[1] Defendant timely objected. (*See* Objection, Doc. Entry No. 51.) The government did not respond to Defendant's objections. For the reasons set forth below, the R&R is adopted in its entirety and Defendant is found to have violated the conditions of supervised release.

**BACKGROUND**

      Defendant pled guilty to conspiracy to distribute and to possess with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846(b)(1)(C). On April 16, 2012, Defendant was sentenced to time served and three years of supervised release

---

[1] Familiarity with the R & R, as well as the procedural history and relevant facts of this case, is assumed. (*See generally* R&R, Doc. Entry No. 49.)

with special conditions, including six months of home detention with electronic monitoring, a special assessment of $100, and no fine due to her inability to pay. As she was sentenced to time served, Defendant's term of supervised release commenced immediately upon sentencing.

The following facts surrounding the charged violations were adduced at the hearing held before the magistrate judge on October 23, 2012, at which U.S. Probation Officer Thomas Barbeau ("Officer Barbeau") of the Southern District of Ohio testified. In addition, a series of stipulations between the parties concerning various facts were submitted at the hearing. (*See* Stipulations, GX 5-7.)[2]

Following the sentencing proceeding on April l6, 2012, Defendant completed and signed the standard questionnaire provided by Probation to defendants who are under supervision (the "questionnaire"). (GX 1, 6 ¶ 2.) In the employment section of the questionnaire, Defendant indicated she was self-employed, full-time in "Alteration & Reupholstery" and worked out of her home. (GX 1 at 2.) Defendant did not disclose on the questionnaire that she worked as an exotic dancer at a strip club named "Platinum Plus" located in Lexington, Kentucky. (GX 2 ¶ 3.) Defendant had worked at Platinum Plus as recently as March 26, 2012 – a mere three weeks before her sentencing – and as frequently as twenty-five times between February 1, 2012 and March 26, 2012 (according to the club's records). (GX 5 ¶ 8; Platinum Plus Attendance Logs, GX 4; Tr. 22-26.) In addition, Defendant had not disclosed her employment as an exotic dancer or her earnings from Platinum Plus (which could amount to $1,000 or more per week) to her Pretrial Services Officer or to Probation during the presentence investigation. (GX 5 ¶ 3.)

The same day Defendant completed the questionnaire, she met with Senior EDNY Probation Officer Margret A. Foley ("Officer Foley"), who gave Defendant a copy of the

---

[2] "GX" refers to the government's exhibits introduced at the evidentiary hearing. "Tr." refers to the transcript of the October 23, 2012 evidentiary hearing before the magistrate judge.

2

document entitled "Conditions of Probation and Supervised Release" and read aloud to Defendant the standard and special conditions set forth in the document. (GX 2, 7 ¶¶ 1-3.) Specifically, they reviewed the standard condition that "defendant shall not leave the judicial district without permission of the Court or probation officer." Officer Foley provided Defendant with a specific authorization entitled "Permission to Travel" so Defendant could leave the EDNY to travel home to Portsmouth, Ohio that night. (GX 3, 7 ¶ 6.) While at home, the U.S. Probation Department for the Southern District of Ohio ("SDOH Probation Department") would supervise Defendant.

On April 17, 2012, Officer Barbeau of the SDOH Probation Department visited Defendant at her home. During the visit, Defendant asked that the ankle monitor[3] required by the condition of electronic monitoring be replaced with voice recognition technology, because she wanted to resume working as an exotic dancer. (Tr. 12-13.) She then admitted that she had worked as an exotic dancer prior to sentencing without informing Pretrial Services. (Tr. 15.) Officer Barbeau indicated the Court would need to approve any modification of her conditions and that he would need clarification from EDNY Probation before approaching the Court with that request. (Tr. 14.) Furthermore, he expressed doubts that the Court would grant a modification of her conditions of supervised release so that Defendant could work as an exotic dancer. (*Id.*)

The next day, April 18, 2012, Defendant and Officer Barbeau discussed by telephone Defendant's plan to go to school in Lexington and support herself by working as an exotic dancer. He advised her that any such plan would require transferring supervision to the Eastern District of Kentucky. He also told her he was awaiting a response from EDNY Probation about eliminating the electronic monitoring to work as an exotic dancer. (Tr. 17-19.) That night,

---

[3] At this point, Probation had not yet installed the ankle bracelet on Defendant. (Tr. 11.)

Defendant traveled to Lexington and worked at Platinum Plus. (GX 5 ¶ 6; Tr. 30.) She spent that night in Lexington at the residence of a man with whom she had a relationship. (*Id.*)

On October 23, 2012, a violation of supervised release hearing was held before the magistrate judge. Officer Barbeau was the sole testifying witness. The magistrate judge found there was no dispute that Defendant failed to disclose her employment as an exotic dancer on the questionnaire or that she traveled from her residence in Portsmouth, Ohio to Lexington, Kentucky without permission on April 18, 2012. Rather, the central question with respect to both charges was whether Defendant deliberately committed the violations, or simply misunderstood her obligations. The magistrate judge found it was more likely than not that Defendant deliberately committed the violations.

## LEGAL STANDARD

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F. 3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

## DISCUSSION

"Revocation proceedings are not deemed part of a criminal prosecution, and, therefore,

defendants in such proceedings are not entitled to 'the full panoply of rights' that criminal defendants generally enjoy." *United States v. Carthen*, 681 F. 3d 94, 99 (2d Cir. 2012), *cert. denied* __ U.S. __, 133 S. Ct. 837 (Jan. 7, 2013) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). At a violation of supervised release hearing, the governing standard is whether the government has proven the alleged violations of supervised release by a preponderance of the evidence. Fed. R. Crim. P. 32.1(d); 18 U.S.C. § 3583(e)(3); *see also Carthen*, 681 F. 3d at 99-100.

The Court has reviewed the record, the relevant case law, the R&R, and Defendant's objections to the R&R. As set forth in the R&R, the magistrate judge reviewed the evidence submitted to the court, which included a series of stipulations between the parties as to various facts and the testimony of Officer Barbeau, and found that the government had proved by a preponderance of the evidence that Defendant: (1) deliberately chose to conceal her employment as an exotic dancer on the questionnaire; and (2) deliberately chose to travel to Lexington for the purpose of working as an exotic dancer in violation of the conditions of supervised release. (R&R at 2, 7-8.)

Defendant contends that, while the R&R accurately describes the evidence presented to the magistrate judge, the evidence does not support a finding that Defendant deliberately violated her conditions of supervised release. Specifically, Defendant objects to the following conclusions of the magistrate judge: (1) Defendant intended to continue working as an exotic dancer and deliberately chose not to disclose this intention on the questionnaire; and (2) there is sufficient evidence that Defendant was aware she did not have permission to travel to Lexington on April 18, 2012. (Obj. at 14 (citing R&R at 7), 16 (citing R&R at 8).)

5

1. <u>Defendant Deliberately Made False Statements Regarding Employment to the Probation Department</u>

Defendant argues there was insufficient evidence for the magistrate judge to conclude that Defendant deliberately omitted her employment as an exotic dancer from the questionnaire, because the employment section of the questionnaire was vague. (Obj. at 14-15.) Defendant cites several cases to support her argument. None of these cases are applicable to the facts and circumstances of this case and the preponderance of the evidence supports the magistrate judge's conclusions.

Defendant argues the questionnaire was vague because it does not give a specific time frame for employment and Defendant had stopped dancing three weeks before the sentencing hearing. (Obj. at 14.) Therefore, Defendant reasonably believed exotic dancing was not her current employment. Defendant argues the "looseness" in the questionnaire is similar to the facts of *United States v. Spencer*, 640 F. 3d 513 (2d Cir. 2011), where the Second Circuit vacated the district court's finding that defendant had failed to comply with the condition that he notify the probation officer at least ten days prior to any change in residence or employment. *Spencer*, 640 F. 3d at 521-22. As defendant was fired without any notice, the Second Circuit held there was no violation, because a defendant cannot be imprisoned for "failing to comply with an impossible condition." *Id.*

Additionally, relying on *United States v. Green*, 618 F. 3d 120 (2d Cir. 2010), Defendant contends that the questionnaire failed to specify what employment Defendant was required to include. In *Green*, the Second Circuit held the prohibition against wearing gang related clothing was impermissibly vague, because it did not specify particular colors or insignia that would signify membership in a particular gang and, therefore, a person "of ordinary intelligence would be unable to confidently comply with this condition." *Green*, 618 F. 3d at 124. The Second

6

Circuit's concerns expressed in *Green* are similar to those of *Spencer*, namely, that it would be impossible for a defendant to know what colors he could wear, as gang related colors cover the range of the rainbow. *Id.*

*Spencer* and *Green* are inapposite to the instant situation. It was not impossible for Defendant to correctly complete the employment section in the questionnaire. Furthermore, it was reasonable to expect that a person of ordinary intelligence would understand the questionnaire required her to list employment performed as frequently, and that is as lucrative, as Defendant's exotic dancing. Exotic dancing was not just "an activity," as Defendant refers to it in her objection, rather it was a major, and apparently her primary, source of income. (*See* Obj. at 15.) Moreover, it was through exotic dancing that Defendant met her co-conspirator and got involved in the drug trafficking conspiracy. (Def.'s Sentencing Mem. at 4-5, Doc. Entry No. 26.)

Defendant worked as an exotic dancer as recently as three weeks before her sentencing, as frequently as twenty-five times between February 1, 2012 and March 26, 2012, and resumed working as an exotic dancer *two days* after completing the questionnaire. She earned $1,000 to $2,000 a week for exotic dancing and, therefore, during the two-month period immediately prior to her April 16 sentencing, earned between $5,000 and $10,000, which she neither reported to Probation or to the Internal Revenue Service ("IRS"). (Presentence Investigation Report ("PSR") ¶¶ 60, 63, Doc. Entry No. 23.) Furthermore, within twenty-four hours of completing the questionnaire, she requested a modification of her conditions of supervised release so that she could work as an exotic dancer. Thus, this is not a situation where the condition was vague or impossible to abide by. Defendant purposely omitted from the questionnaire a primary form of employment that she had every intention of continuing.[4]

---

[4] Defendant also cites *United States v. Maloney*, 513 F. 3d 350 (3rd Cir. 2008) in support of his argument that it is impermissible to find a violation of supervised release here because the questionnaire was vague. (Obj. at 15.) In

Moreover, this is not the first time Defendant failed to disclose her work as an exotic dancer. Defendant had sought and received permission to work at a salon in Lexington prior to sentencing and, therefore, she was aware that travel for employment had to be approved. (Tr. 15.) She nonetheless withheld both her employment as an exotic dancer in Lexington and her earnings from that employment from Pretrial Services and from Probation during the presentence investigation. (*Id.*) She stated she did so because she was worried it would reflect poorly on her character at sentencing. (*Id*.) The fact that she previously had withheld her exotic dancing from Pretrial Services and Probation because she feared it would be frowned upon and perhaps negatively affect the sentence she would receive, is further evidence supporting the magistrate judge's finding that she deliberately omitted her exotic dancing from the questionnaire. It is clear from these circumstances that Defendant selectively disclosed information as a mean to her own ends.

Accordingly, the magistrate judge appropriately found, by a preponderance of the evidence, that Defendant intended to continue working as an exotic dancer and deliberately chose not to disclose this intention on the questionnaire.

2. <u>Defendant Deliberately Traveled Outside the Judicial District of Supervision</u>

Defendant also contends there was insufficient evidence for the magistrate judge to conclude that Defendant was aware she did not have permission to travel outside the judicial district of supervision. Defendant argues that she had permission to travel to Lexington before her sentencing and no one told her this permission was no longer in effect, Officer Barbeau did not prohibit her from traveling to Lexington when she asked about working in Lexington as an

---

*Maloney*, the Third Circuit vacated the district court's finding that a street peddler had violated the standard condition requiring he notify his probation officer within 72 hours of being arrested or questioned by a law enforcement officer when he received a summons for failing to produce a peddler's license, because the condition was "impermissibly vague as applied." *Maloney*, 513 F. 3d at 359. *Maloney* is similarly inapplicable for the reasons set forth above.

exotic dancer, and when he later told her she was prohibited from doing so, she voluntarily admitted she had traveled to Lexington. (Obj. at 16.)

Defendant relies on *United States v. Carlton*, 442 F. 3d 802 (2d Cir. 2006). While affirming the district court's finding that defendant committed a bank robbery while on supervised release, the Second Circuit vacated the district court's finding that defendant had conspired to commit the robbery, because: (a) it was improper to infer from defendant's use of co-conspirators in past robberies that he would use co-conspirators in future robberies; (b) there was insufficient evidence to support the charge of conspiracy; and (c) the "best evidence" showed he did not conspire. *Carlton*, 442 F. 3d at 812-13.

Defendant argues that, as in *Carlton*, the magistrate judge impermissibly inferred that Defendant must have intentionally decided to ignore her travel restriction in the absence of specific evidence. Defendant also maintains that, as in *Green*, Defendant received no specific limiting instructions for her travel restriction. Furthermore, as in *Maloney*, Defendant and the Probation Officers had differing views of what the travel restriction meant and Defendant's interpretation was reasonable.

This case is not analogous to *Carlton*, because, here, a preponderance of the evidence supports the magistrate judge's finding that Defendant was aware she did not have permission to travel to Lexington. Moreover, there is little to no evidence to support Defendant's contention that the violation was a good faith mistake on her part. Defendant previously had requested and obtained permission from Pretrial Services to travel to Lexington to work at a salon, *not* to work as an exotic dancer. Officer Foley gave Defendant written and oral instructions regarding her travel restrictions while on supervised release and a "Permission to Travel" authorization to travel home to Ohio. When Defendant requested a modification of conditions to remove the

electronic monitoring, Officer Barbeau advised her that the Court must approve any modifications, but was doubtful such approval would be granted to permit employment at a strip club. The next day Officer Barbeau advised her he had contacted EDNY Probation, but had not yet received a response.

Therefore, when Defendant decided to travel to Lexington to work at "Platinum Plus," she was aware of the procedures for requesting permission to travel and that she required permission to travel and to work as an exotic dancer. In addition, Probation had sufficiently notified her of her travel restrictions and Defendant knew it was unlikely the Court would grant her permission to work as an exotic dancer. Defendant also was aware that Officer Barbeau had asked EDNY about Defendant working as an exotic dancer in Lexington and he had not received a response yet.

Furthermore, the fact that Officer Barbeau did not tell her she could or could not travel to Lexington to work as an exotic dancer is not evidence in Defendant's favor. If a probation officer does not give explicit permission granting a probationer's request, the reasonable and default assumption is that the probationer does not have permission. This is particularly true when the probation officer expresses doubts that the court ultimately will grant permission. Nor does it help Defendant that she had disclosed to Officer Barbeau that she had traveled to Lexington after the fact, because she did not disclose that the purpose for her travel was to work as an exotic dancer or that she stayed overnight in Lexington. Furthermore, she failed to disclose this same information to Pretrial Services while on pretrial supervision and Probation during the presentence investigation interview.

Defendant attempts to justify her need to work as an exotic dancer by relying on the Court's instructions to her at sentencing that she pay her student loans. (Obj. at 3; Tr. 12-13.)

Student loan payments are not an excuse for twice violating conditions of supervised release within days of sentencing and exotic dancing is not the only employment that will allow Defendant to make payments toward her student loans.

Accordingly, the magistrate judge appropriately found, by a preponderance of the evidence, that Defendant was aware she did not have permission to travel to Lexington on April 18, 2012.

## **CONCLUSION**

For the reasons set forth above, the R&R is adopted in its entirety and Defendant is found to have violated the following conditions of supervised release by a preponderance of the evidence: (1) false statements to a Probation Officer; and (2) leaving the judicial district without permission.

SO ORDERED.

Dated: Brooklyn, New York
       May 23, 2013

                                                 /s/
                                    DORA L. IRIZARRY
                                 United States District Judge